UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROBERT S. WILCOX,

          Plaintiff,

    v.

STATE OF OHIO, *et al.,*

          Defendants.

Case No. 2:23-cv-2477
Judge Michael H. Watson
Magistrate Judge Kimberly A. Jolson

<u>REPORT AND RECOMMENDATION</u>

This matter is before the Court on Defendants' Motions to Dismiss, or in the alternative, Motions for Summary Judgment. (*See* Docs. 35, 37, 40, 41, 43). For the following reasons, the Undersigned **RECOMMENDS** that Defendants' Motions be construed as Motions for Summary Judgment, that the Motions be **GRANTED**, and that this action be **DISMISSED without prejudice**.

I.    **BACKGROUND**

Plaintiff, who is incarcerated, brings this action against fifteen Defendants who worked at various prisons in the State of Ohio. He filed his Complaint on August 2, 2023, and filed two supplemental pleadings shortly after. (*See* Docs. 1, 2, 3).[1] After an initial screen, this Court allowed First Amendment retaliation and Eighth Amendment claims to proceed against Defendants Wright, Mitchell, Reed, Hogan, and White, based on allegations that these Defendants retaliated against Plaintiff for using the grievance process by subjecting him to continued and varied harassment by other prisoners. (Doc. 7 at 14; Doc. 10 at 4–5 (adopting Doc. 7)). The Court

---

[1] Because the headers and numbering on Docket No. 6 are illegible, the Court cites to Plaintiff's Complaint and two supplemental pleadings for clarity. (Docs. 1, 2, 3).

also allowed Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Orr, Barnett, Ruth, Doukoure, Chifamba, Morgan, Durner, Springer, Herrick, and Coe to proceed.  (*Id.*).  These claims are based on Plaintiff's assertions that these Defendants administered medication without his consent and failed to provide adequate medical care for his symptoms.  (Doc. 7 at 14).

Identification issues arose early on in this case for two Defendants Plaintiff named in his pleadings.  Initially, the Court allowed Plaintiff to proceed on an Eighth Amendment deliberate indifference to serious medical needs claim against "Nurse Greg."  (*See* Doc. 7 at 14).  But recently, Defendant Greg was dismissed when he could not be identified or served.  (Docs. 45, 47).  In addition, Plaintiff identified a "CO Whitey" at "Lancaster Institution" in his Complaint.  (Doc. 1-3 at 1).  Based upon the pleadings and outside investigation efforts, Defendants represent that they believe this individual is Defendant James White.  (Doc. 35 at 1 n.1).  Defendant White was served on January 29, 2024, and joined in the instant Motions to dismiss the claims against him.  (*See* Docs. 26, 35).

The events alleged in Plaintiff's pleadings span a decade.  (*See generally* Docs. 1, 2, 3).  Over the years, Plaintiff has been incarcerated at several institutions: Southeastern Correctional Institution (SCI), Madison Correctional Institution (MaCI), and Allen-Oakwood Correctional Institution (AOCI).  (Doc. 1-3 at 1; Doc. 35 at 14).  Defendants were employed in various roles at these institutions.  When Plaintiff was at SCI, Defendant White worked as a correctional officer.  (Doc. 1-3 at 1; Doc. 35 at 14).  During Plaintiff's time at MaCI, Defendants Reed, Mitchell, and Wright were corrections officers; and Ruth, Barnett, Orr, and Herrick were medical staff.  (Doc. 35 at 14).  Defendant Hogan served as MaCI's Deputy Warden from September 26, 2021, until April 8, 2023.  (*Id.*).  Also at MaCI, Defendant Morgan worked as a behavioral health provider,

and Defendant Chifamba was a nurse practitioner from 2019 until 2023. (*Id.*). Finally, Defendants Coe, Durner, and Springer all served on an involuntary medication board. (Doc. 35 at 14; Doc. 2 at 2). Plaintiff believes Defendant Morgan also served on this board. (Doc. 2 at 2).

Plaintiff's pleadings are, at times, difficult to understand. While he describes some of his interactions with Defendants, he provides no details, such as when events occurred or what actions specific Defendants took. Generally, he alleges that Wright, Mitchell, Reed, Hogan, and White instructed other prisoners to harass and intimidate him. For example, Plaintiff says that Defendants Wright, Mitchell, and Hogan told inmates to touch him. (Doc. 1-3 at 7). Plaintiff also says these Defendants had prisoners take his belongings, hit his bed while he was sleeping, start fights with Plaintiff, and deprive of him of water. (*See id.* at 2, 4, 5, 7, 10–11, 13, 14–15; Doc. 1-4 at 2–3). Plaintiff claims these acts were in retaliation for his use of the prison's grievance system. (*See, e.g.*, Doc. 1-3 at 10–11; Doc. 1-4 at 1–3).

Plaintiff also says that he experiences a range of painful symptoms, including "body shakes," sore joints, blurry vision, swollen hands, burning, and a "hot glue" feeling. (Doc. 1-3 at 5–6). Although Defendants Orr, Barnett, Ruth, Doukoure, Chifamba, Morgan, Durner, Springer, Herrick, and Coe have all contributed to Plaintiff's physical and mental health treatment, Plaintiff says none of the medications they provide help. (*See, e.g.*, Doc. 1-3 at 6, 14, 16; Doc. 1-4 at 7; Doc. 2 at 2). For instance, Plaintiff alleges that Defendant Doukoure gave him medication that was either ineffective or made his symptoms worse. (*Id.* at 6, 16). Similarly, Plaintiff says that medicine given to him by Defendant Chifamba blurs his vision and causes him to vomit, yet Defendant Chifamba forces him to take this medication "knowing it do[es] not work." (Doc. 1-4 at 7). Defendants Orr, Barnett, Ruth, and Morgan also "force[d] [Plaintiff] to take a shot that doesn't work," even though Plaintiff told Defendant Barnett that the shot causes him more pain.

3

(*Id.* at 14).  Lastly, Plaintiff alleges that Defendants Morgan, Durner, Springer, Herrick, and Coe serve on a board that forces him to take psychiatric medication.  (Doc. 2 at 1–2).  Plaintiff further says that he did not consent to this treatment, and the medicine causes him pain.  (*Id.* at 2).

Defendants deny they violated Plaintiff's First and Eighth Amendment rights and say that Plaintiff suffers from many medical conditions, including significant mental health issues.  (Doc. 35 at 15–22, 36 (stating many of Plaintiff's allegations are "entirely fictional")).  Specifically, Defendants claim Plaintiff "often demonstrates hallucinations, bizarre thought content, disorganized speech, illogical and irrational thought and speech patterns, [and] poor insight and poor judgment which places both himself and others in serious harm."  (*Id.* at 18–19).  Defendants say Plaintiff has received extensive medical and mental health treatment and that he requires mandated psychotropic medication.  (*Id.* at 39–41).

In their Motions, Defendants ask to dismiss this case under Federal Rule of Civil Procedure 12(b)(6) or alternatively move for summary judgment on all claims.  (Docs. 35, 37, 40, 41, 43).  Plaintiff has not responded to the Motions.  This District's Local Rules give parties twenty-one days from the date of service of a motion to respond.  *See* S.D. Ohio Civ. R. 7.2(a)(2) ("Any memorandum in opposition shall be filed within twenty-one days after the date of service of the motion.").  Defendants' first Motion to Dismiss was filed April 5, 2024, and their last Motion to Dismiss was filed on April 30, 2024.  (*See* Docs. 35, 43).  So, Plaintiff's responses were due between April 26, 2024, and May 21, 2024.  To date, Plaintiff has not responded to any of the Motions, and the time to do so has passed.  Accordingly, the Court treats the Motions as unopposed and ripe for consideration.

## II.     STANDARD

Federal Rule of Civil Procedure 12(d) provides "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The Rule further states that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "When a party is aware that material outside the pleadings has been presented to the court, the party is on notice the Rule 12(b)(6) motion may be treated as a motion for summary judgment." *Kuenzler v. Pampur*, No. 1:08-cv-783, 2012 WL 2244330, at *3 (S.D. Ohio June 15, 2012) (citing *Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir. 1986)), *report and recommendation adopted*, No. 1:08-cv-783-HJW, 2013 WL 55632 (S.D. Ohio Jan. 3, 2013). "Whether a district court must provide actual notice that it intends to convert a motion to dismiss into a motion for summary judgment depends on the facts and circumstances of each case." *Shelby Cnty. Health Care Corp. v. Southern Council of Indus. Workers Health and Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000). But if one party "is likely to be surprised by the proceedings, notice is required." *Id.*

Here, Defendants alternatively move for summary judgment and provide substantial evidence outside of the pleadings, including grievances, medical records, and affidavits from Ohio Department of Rehabilitation and Correction (ODRC) staff. (*See* Docs. 35, 37, 40, 41, 43; Docs. 35-1, 35-2, 35-3). Further, while Plaintiff has not responded to the Motions, he had sufficient notice the Undersigned may treat the Motions as ones for summary judgment, based on the titles of the Motions and the attached exhibits. *See Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (finding that the plaintiffs had notice that a motion to dismiss may be treated as a motion for summary judgment where materials outside the pleadings were submitted and the defendants

5

alternatively moved for summary judgment). Accordingly, the Undersigned **RECOMMENDS** construing Defendants' Motions as ones requesting summary judgment. *See* Fed. R. Civ. P. 12(d).

Summary judgment may be granted only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Initially, the burden is on the moving party to identify the basis of its motion and the portions of "the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" that show "the absence of a genuine dispute of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Then, the burden shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Even if a motion for summary judgment is unopposed, "the district court cannot grant [it] without first considering supporting evidence and whether the movant has met its burden." *Byrne v. CSX Transp., Inc.*, 541 F. App'x 672, 675 (6th Cir. 2013).

But "[i]t is not the duty of the district court . . . to search the entire record to determine whether there is a genuine issue of material fact." *Jones v. Kimberly-Clark Corp.*, 238 F.3d 421 (Table), 2000 WL 1800475, at *2 (6th Cir. Nov. 28, 2000). Instead, "in the absence of a response, the court must review carefully the evidence that was designated by the moving party . . . and may rely on [that] party's unrebutted recitation of evidence in reaching a conclusion . . . that there is no genuine issue of material fact." *Id.* (citing *Guarino v. Brookfield Twp. Tr.*, 980 F.2d 399, 406, 410 (6th Cir. 1992)).

## III. DISCUSSION

Defendants argue that Plaintiff failed to exhaust his administrative remedies. (Doc. 35 at 26–31). Specifically, they say that Plaintiff failed to file any grievances against them and that he failed to appeal his mandated medication decisions as required by Ohio Department of

Rehabilitation and Correction (ODRC) policies. (*Id.*). The Court addresses each group of Defendants separately.

### A. Claims Against Defendants Wright, Mitchell, Reed, Hogan, and White

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." *Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022) (quoting 42 U.S.C. § 1997e(a)). To comply with this requirement, a prisoner must follow the applicable procedural rules at his correctional institution. *Id.* (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)). Said differently, a prisoner must "take advantage of each step the prison holds out for resolving the claim internally and by following the critical procedural rules of the prison's grievance process" to properly exhaust his claims. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (internal quotation omitted). More still, "[i]n stating that no action shall be brought until such administrative remedies as are available are exhausted, the plain language of the PLRA makes clear the exhaustion is a mandatory precondition to filing an action in federal court." *Williams v. Harris*, No. 1:11-cv-362, 2012 WL 3150955, at *10 (S.D. Ohio Aug. 2, 2012). (internal quotation and quotation marks omitted), *report and recommendation adopted*, No. 1:11-cv-362, 2012 WL 6721088 (S.D. Ohio Dec. 27, 2012). "Exhaustion may not be completed after a federal complaint has been filed." *Hopkins v. Ohio Dep't of Corr.*, 84 F. App'x 526, 527 (6th Cir. 2003) (citing *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

For "complaints related to any aspect of institutional life," prisoners must follow a three-step grievance procedure. *See* Ohio Admin. Code § 5120-9-31(J). To begin the process, a prisoner must file an informal complaint within "fourteen calendar days of the date of the event giving rise to the complaint." *Id.* at § 5120-9-31(J)(1). This complaint must be filed with the direct supervisor

7

or department "most directly responsible for the particular subject matter of the complaint." *Id.*

Second, "[i]f the inmate is dissatisfied with the informal complaint response," he may file a

notification of grievance with the inspector of institutional services. *Id.* at § 5120-9-31(J)(2). After

that, "the inmate may file an appeal with the office of the chief inspector." *Id.* at § 5120-9-31(J)(3).

Once the chief inspector decides the appeal, a prisoner has exhausted his administrative remedies.

*Id.*; *Ball v. Ohio*, No. 2:20-cv-1759, 2020 WL 1956836, at *3 (S.D. Ohio Apr. 23, 2020) ("An

inmate does not exhaust his remedies under § 5120-9-31 until he has received a decision in an

appeal to the office of the Chief Inspector."), *report and recommendation adopted*, No. 2:20-cv-

1759, 2020 WL 2468742 (S.D. Ohio May 13, 2020).

Generally, a prisoner fails to exhaust his administrative remedies if he (1) does not adhere

to all procedural rules, including deadlines, or (2) if he fails to include information required "by

the applicable grievance procedures." *See Jordan v. Woods*, No. 1:10-cv-598, 2012 WL 1805491,

at *2 (S.D. Ohio Apr. 2, 2012) (saying that prisoners must complete the administrative review

process according to the rules set out in the prison grievance process), *report and recommendation

adopted*, No. 1:10-cv-598, 2012 WL 1805488 (S.D. Ohio May 17, 2012); *Hall v. Warren*, 443 F.

App'x 99, 106 (6th Cir. 2011) (stating that plaintiffs fail to exhaust administrative remedies if they

do not include an official's name in a grievance if it is required by the grievance policies); *Marshall

v. Ohio Dep't of Rehab. & Corr.*, No. 2:14-cv-338, 2017 WL 1316942, at *8 (S.D. Ohio Apr. 10,

2017) (noting that Ohio's grievance policies require "factual context including dates, times and

places"), *report and recommendation adopted*, No. 2:14-cv-338, 2017 WL 2210866 (S.D. Ohio

May 19, 2017). Relevant here, Section 5120-9-31(J) mandates that "[i]nformal complaints must

contain specific information," including "dates, times, places, physical descriptions of any

unidentified personnel and the actions of said personnel giving rise to the complaint." Under this

policy, if a prisoner does not know the identity of the prison staff involved, he may file a "John/Jane Doe" complaint. Ohio Admin. Code § 5120-9-31(J). On the whole, what matters is that a prisoner's grievance provides prison officials fair notice of the basis of his complaint. *LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009).

Turning to the instant Motions, Defendants first argue that this Court lacks jurisdiction because Plaintiff failed to exhaust his administrative remedies. (Doc. 35 at 16, 35). Yet courts have repeatedly held that the PLRA's "exhaustion requirement is not jurisdictional." *Kramer v. Wilkinson*, 302 F. App'x 396, 398 (6th Cir. 2008) (quoting *Woodford v. Ngo*, 548 U.S. 81, 101 (2006)); *see Richards v. Perttu*, 96 F.4th 911, 917 (6th Cir. 2024) ("The exhaustion requirement is mandatory, but not jurisdictional." (citing cases)). So, this Court has jurisdiction, whether Plaintiff has exhausted his administrative remedies or not. Second, Defendants also say that Plaintiff has not "established an essential element of his case, i.e. the completion of the grievance process, upon which he would bear the ultimate burden of proof at trial." (Doc. 35 at 30 (citing *Guarino v. Brookfield Tp. Tr.*, 980 F.2d 399, 403 (6th Cir. 1992)). But again, that is not the law. In *Jones v. Bock*, the Supreme Court threw out the Sixth Circuit's previous requirement that prisoners demonstrate exhaustion in their complaints. The Supreme Court further concluded that "failure to exhaust is an affirmative defense under the PLRA" for which Defendants bear the burden of proof. 549 U.S. at 216; *Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022) ("[A] district court should grant summary judgment only if a defendant establishes that there is no genuine dispute of material fact that the plaintiff failed to exhaust." (internal quotation omitted)).

Notwithstanding these lacking arguments, Defendants provide sufficient evidence to meet their burden of showing Plaintiff failed to exhaust his administrative remedies. Because Plaintiff did not respond to Defendants' Motions, the following evidence is undisputed. Attached to

Defendants' Motions is Plaintiff's grievance history from January 1, 2021, through December 23, 2023. (*See* Doc. 35-1 at 10–277). Also provided is a declaration from Institutional Inspector Zachary Gould, who is "an approved records custodian" for prisoners' grievances. (*Id.* at 7). Mr. Gould says he reviewed Plaintiff's grievance history from January 1, 2021, through August 2, 2023, the date this action was filed. (*Id.*). According to these records, Mr. Gould declares only "[five] of the grievances filed by [Plaintiff] were escalated from the filing of a notification of grievance (Step 2) to the filing of an appeal with the Office of the Chief Inspector (Step 3), as required by Ohio Adm. Code 5120-9-31(J)(1)–(3)." (*Id.* at 8). Said simply, out of over one hundred complaints Plaintiff filed between January 1, 2021, and August 2, 2023, Plaintiff only pursued five through the third and final step of Ohio's grievance process. (*See id.* at 44–47, 51–54, 57–59, 60–64, 85–87).

None of these five complaints name Defendants Wright, Mitchell, Hogan, Reed, and White. (*Id.*). And only two of them could be construed as related to his claims against these Defendants. These two complaints involve allegations about Plaintiff's bed. (*Id.* at 44–47, 57–59; *see also* Doc. 1-3 at 2 (alleging that some of the Defendants hit Plaintiff's bed with a locker box and a chair)). Yet these filings fail to provide sufficient information to establish that Plaintiff exhausted his administrative remedies. Nor is it clear that Plaintiff is referring to the same events alleged in his pleadings.

In the first relevant complaint submitted on January 17, 2022, Plaintiff said his "remote control bed with a pole inside" violates the United States Constitution's Eighth Amendment. (Doc. 35-1 at 47). Plaintiff also stated that to "purposely bump a bed or wall with a locker box or chair with illegal instruments" violates his rights. (*Id.*). Yet Plaintiff names no individuals responsible for these alleged actions, nor does he say when or where these issues occurred. (*Id.*). Even so,

staff responded to his complaint, denied it, and noted that Plaintiff "had this same complaint approximately two months ago." (*Id.* at 46). Staff also said that they previously "confirmed [Plaintiff's] bed is not electric/remote controlled." (*Id.*).

Dissatisfied with this answer, Plaintiff then escalated the complaint to a step-two grievance. Again, he failed to provide any details on what staff members were involved or when these issues occurred. (*Id.*). Prison staff denied the grievance for procedural reasons. (*Id.*). Staff noted that Plaintiff "previously filed an [informal complaint] regarding these allegations with an alleged remote control bed with a pole inside of it." (*Id.* (identifying the previous complaint as "MACI1221001976"); *see also id.* at 40–41 (complaint number MACI1221001976)). But Plaintiff "did not escalate [the previous complaint] to the grievance level" in accordance with Ohio Administrative Code § 5120-9-31(J)(2). (Doc. 35-1 at 46). Because prisoners must escalate their informal complaints to grievances "no later than fourteen calendar days from the date of the informal complaint response," and because Plaintiff did not escalate his previous complaint about his bed, prison staff concluded his new complaint was untimely. (*Id.* at 46). Plaintiff appealed this decision, and his appeal was denied. (*Id.* at 45).

In the second relevant complaint dated February 3, 2022, Plaintiff wrote, "Wrong answer in grievance an bogus codes that was wrote about the remote bed an live in stew with a bunkie an intimidation thank you for time an inmates huffing." (Doc. 35-1 at 57). This complaint was initially closed by prison staff without a response. (*Id.* at 59). Plaintiff then escalated this complaint to a grievance. (*Id.*). Prison staff denied the grievance, noting that Plaintiff had filed multiple complaints "on the same topic" and that "[t]his concern will only be addressed under case number MACI1221001976." (*Id.* at 58–59). Again, Plaintiff appealed and stated his intent to file a civil lawsuit. (*Id.* at 58). This appeal, too, was denied. (*Id.*). In the denial, the Office of the

11

Chief Inspector stated that Plaintiff's allegations were "previously addressed [in] complaint MACI1221001976 where [Plaintiff] did not follow step [two] of the grievance procedure after receiving" a response to his informal complaint. (*Id.*). Because Plaintiff missed his fourteen-day window to escalate the previous complaint, the Office of the Chief Inspector concluded that his new complaint was untimely. (*Id.*).

Here, the Undersigned finds these filings lacking for exhaustion purposes. First, because Plaintiff fails to identify anyone or provide any details, the Court cannot conclude with any certainty that the allegations in these filings match those raised in his pleadings. Second, by failing to provide more factual information, Plaintiff failed to give prison officials "fair notice of the alleged mistreatment or misconduct" forming the basis of his complaints. *LaFountain*, 334 F. App'x at 740*; see Marshall*, 2017 WL 1316942, at *8–9 (finding a prisoner failed to exhaust his administrative remedies where he failed to provide names of prison officials, dates, times, and places in his grievances); *Thompson v. Erdos*, No. 1:16-cv-812, 2018 WL 8807829, at *5–6 (S.D. Ohio Sept. 21, 2018) (finding Plaintiff's "general complaints" and "allegations not tied to specific conduct or specific dates" inadequate for exhaustion purposes). And while Defendants' current reliance on substantive deficiencies with Plaintiff's filings goes against prison officials' original denials for procedural issues, this inconsistency "does not require the conclusion that [Plaintiff] properly exhausted his claims." *Marshall*, 2017 WL 1316942, at *9. "Where the grievance is denied alternatively on the merits and for failure to comply with critical grievance procedures, a later action will be subject to dismissal for failure to properly exhaust[.]" *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 889 (6th Cir. 2009). Here, prison staff denied Plaintiff's previous complaint about his bed, labeled as MACI1221001976, on the merits. (Doc. 35-1 at 41 (stating that, after examination, staff determined Plaintiff's bed is "just like the other 117 beds in the

12

Unit")). Then, Plaintiff's later duplicative complaints were denied as untimely because Plaintiff never appealed MACI1221001976 to the Office of the Chief Inspector as required. (*Id.* at 44–47, 57–59); Ohio Admin. Code § 5120-9-31(J)(3). Therefore, Defendants' present arguments about Plaintiff's failure to include factual information in his complaints have merit.

The remaining three complaints that Plaintiff completed according to Ohio Administrative Code § 5120-9-31(J) fail to mention Defendants Wright, Mitchell, Reed, Hogan, and White. (*See generally* Doc. 35-1 at 51–54, 60–64, 85–87). Though not required to do so, the Court has further examined various grievance forms attached to Plaintiff's pleadings for evidence of Plaintiff's exhaustion efforts. (*See* Doc. 1-6 at 1–11). Even so, none of these documents show Plaintiff filed any complaints about Defendants in accordance with Ohio's three-step process. (*See* Doc. 1-6 at 1–11).

Still, in his Complaint, Plaintiff claimed that his pleadings covered events taking place over the course of ten years. (Doc. 1-3 at 5). So, theoretically, Plaintiff could have exhausted his administrative remedies for some incidents prior to the records provided by the parties. Yet those allegations would likely be time-barred. The statute of limitations for Plaintiff's claims under 42 U.S.C. § 1983 is two years. *See Whiteside v. Collins*, No. 2:08-cv-875, 2010 WL 1032424, at *2 (S.D. Ohio Mar. 17, 2020) (stating the statute of limitations for First Amendment retaliation claims under Section 1983 is two years); *Oliphant v. Goodmen*, No. 1:19-cv-662, 2020 WL 5701913, at *2 (S.D. Ohio Sept. 24, 2020) (noting the same for Eighth Amendment claims), *report and recommendation adopted*, No. 1:19-cv-662, 2020 WL 6060678 (S.D. Ohio Oct. 14, 2020). And none of the records provided by the parties show any exhausted filings against these Defendants in the two years preceding this lawsuit. (*See* Doc. 35-1 at 10–277). So, the Court finds Defendants have met their burden to show Plaintiff failed to exhaust his administrative remedies. Based upon

their undisputed evidence, the Undersigned **RECOMMENDS** that Plaintiff's claims against Defendants Wright, Mitchell, Reed, Hogan, and White be **DISMISSED without prejudice**.

The Court now turns to Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Orr, Barnett, Ruth, Doukoure, Chifamba, Morgan, Durner, Springer, Herrick, and Coe. Because different grievance procedures apply to these Defendants, the Court addresses them separately.

### B. Claims Against Defendants Orr, Barnett, Ruth, Doukoure, Chifamba, and Morgan

Briefly, the Court summarizes Plaintiff's allegations against these Defendants. In his pleadings, Plaintiff says that Defendants Doukoure and Chifamba prescribed him medication that was ineffective and caused other painful symptoms. (Doc. 1-3 at 6, 16; Doc. 1-4 at 7). Plaintiff also asserts that Defendants Orr, Barnett, Ruth, and Morgan "force[d] him to take a shot that doesn't work." (Doc. 1-4 at 14). For these allegations, the three-step grievance procedure outlined in Ohio Administrative Code § 5120-9-31(J) applies. *See Williams v. Ohio Dep't of Rehab. & Corr.*, No. 3:16-cv-384, 2019 WL 4016145, at *4–5 (S.D. Ohio Aug. 26, 2019) (applying Ohio's three-step grievance procedures to a prisoner's Eighth Amendment medical claims), *report and recommendation adopted*, No. 3:16-cv-384, 2019 WL 4452233 (S.D. Ohio Sept. 17, 2019).

As discussed above, Plaintiff only completed five appeals as required by Ohio Administrative Code § 5120-9-31(J)(1)–(3). Again, Defendants argue that none of these filings name them. (Doc. 35 at 29). Yet Defendants seemingly overlook that two of the five complaints involve Defendant Orr. In the first complaint submitted on January 28, 2022, Plaintiff writes that Defendant Orr forced him to take a medical trip against his will. (Doc. 35-1 at 51 (stating that he was denied an "AMA" by Defendant Orr and taken on a medical trip after being threatened with

14

pepper spray)).  Although staff denied his complaint at every level, Plaintiff escalated this complaint to a step-two grievance and appealed the denial of that grievance.  (*See id.* at 51–54).  His appeal was also denied.  (*Id.*).  Then, on March 7, 2022, Plaintiff submitted another informal complaint about this medical trip, although he did not name Defendant Orr.  (Doc. 35-1 at 85).  Staff denied this complaint at each step for being duplicative of his January 28 complaint.  (*Id.* at 85–88).

Even though Plaintiff discusses Defendant Orr in these filings, his exhaustion efforts fail because the incident Plaintiff discusses in his complaints is not the same event described in his pleadings.  While Plaintiff's administrative filings discuss a medical trip he did not wish to take, (*Id.* at 51–54, 85–88), his pleadings say only that Defendant Orr forced him to take an ineffective shot.  (Doc. 1-4 at 14).  So, Plaintiff did not properly grieve the claim he wants to pursue.

Similarly, Plaintiff also failed to exhaust his claims against Defendants Barnett, Ruth, Morgan, Doukoure, and Chifamba.  As described above, none of the five complaints that Plaintiff completed according to Ohio's grievance procedure involved any of his allegations against these Defendants.  (*See* Doc. 35-1 at 44–47, 51–54, 57–59, 60–64, 85–87).  And while Plaintiff attempted to file complaints about them after he filed this lawsuit, (Doc. 35-1 at 245–46 (discussing allegations against the warden), 247–48 (stating that Defendant Chifamba provided "inadequate medical care), 249–50 (accusing Defendant Morgan of retaliating against Plaintiff for filing grievances), 258–59 (asserting complaints against unnamed individuals)), these efforts were too late.  Before filing a case in federal court, a prisoner is required to first exhaust all his administrative remedies, or his claims are subject to dismissal.  *Hopkins*, 84 F. App'x at 527.  Therefore, the Undersigned **RECOMMENDS** Plaintiff's claims against these Defendants be **DISMISSED without prejudice**.

15

### C.    Claims Against Defendants Morgan, Durner, Springer, Herrick, and Coe

As for Plaintiff's remaining claims, Plaintiff says that Defendants Morgan, Durner, Springer, Herrick, and Coe served on a board that forced him to take psychiatric medication against his will.  (*See* Doc. 2).  Defendants again argue Plaintiff failed to exhaust his administrative remedies for these claims.  (Doc. 35 at 30–31).  Once more, the Undersigned agrees.

To start, none of the five complaints for which Plaintiff properly completed Ohio's three steps address these claims or name these Defendants.  (Doc. 35-1 at 44–47, 51–54, 57–59, 60–64, 85–87).  But because these claims involve mandated psychotropic medication proceedings, a separate administrative process applies.  As always, whether a prisoner exhausted his claim is "defined not by the PLRA, but by the prison grievance process itself."  *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88).  To that end, Ohio Administrative Code § 5120-9-31(B) provides that the three-step "inmate grievance procedure will not serve as an additional or substitute appeal process for . . . those issues or actions which already include a separate appeal mechanism beyond the institution level or those issues or actions where a separate administrative rule specifically indicates there is no appeal or where a final decision has been rendered by operation support center staff or a managing officer."  Put plainly, Ohio Administrative Code  5120-9-31(J)'s three-step process does not apply if "a separate appeal mechanism" exists. *See* Ohio Administrative Code § 5120-9-31(B).  That is the case here, and mandated medication proceedings are governed by ODRC Policy 67-MHN-29.

With their Motions, Defendants provide the three versions of ODRC Policy 67-MHN-29 that were in effect from March 2020 through September 2022.  (Doc. 35-3 at 288–308 (ODRC Policy 67-MHN-29)).  While the policy changed slightly over the years, the basic elements remained the same.  (*See id.* at 288–308).  Policy 67-MHN-29 provides that "[m]andated

psychotropic medication shall be considered" for prisoners "with a serious mental illness who refuses voluntary treatment and for whom there is a substantial likelihood of serious harm towards self or others, a substantial likelihood of significant property damage or who is gravely disabled as a result of diagnosed serious mental illness." (*Id.* at 290, 297, 304).  Once a proper mandated medication request is completed by medical staff, the first step is a mandated medication hearing. (*Id.* at 291–92, 298–99, 305–06).  For these proceedings, prisoners are appointed a patient advisor to help them with the process.  (*Id.* at 292, 299, 306).  If a prisoner chooses not to attend the mandated medication hearing, the advisor "shall exercise the rights of the patient on their behalf" at the hearing.  (*Id.*).  Once the hearing is complete, if the Mandated Medication Committee decides involuntary medication should be administered, the prisoner may appeal that decision.  (*Id.* at 293, 299, 306).  For appeals, the patient advisor remains available to assist the prisoner.  (*Id.*).  If the prisoner "lacks [the] capacity" to appeal or is unable to verbalize whether they wish to appeal, the patient advisor must file an appeal on the prisoner's behalf.  (*Id.*).  Once an appeal is submitted, the State Psychiatry Director reviews it and issues a final decision.  (*Id.* at 293, 300, 307).  If the Mandated Medication Committee's decision is affirmed, medical staff may begin involuntarily administering medication to the prisoner.  (*Id.*).

In support of their exhaustion arguments, Defendants offer the declaration of psychiatric nurse supervisor Sandra Raypole, who is an approved records custodian for mental health records at MaCI.  (Doc. 35-2 at 6).  Defendants also provide records from Plaintiff's mandated medication proceedings.  (*See generally* Doc. 35-3).  Again, because Plaintiff did not respond to Defendants' Motions, the evidence is undisputed.

According to Nurse Raypole's declaration, Plaintiff's first mandated medication hearing took place on February 1, 2023.  (Doc. 35-2 at 7; *see also* Doc. 35-3 at 114 (documenting Plaintiff's

reaction after the hearing)). Nurse Raypole was assigned as Plaintiff's patient advisor. (Doc. 35-2 at 7). Before the hearing, she met with Plaintiff to explain the process. (Doc. 35-3 at 121 (indicating that the patient advisor met with Plaintiff and "[e]xplained nature and purpose of the hearing"), 123 (noting that Plaintiff's patient advisor for this hearing was "S. Raypole RN, PNS")). Yet Plaintiff chose not to attend the February 1 hearing. (*See id.* at 114, 119 (checking "No" when asked if he wished to attend the hearing)). After the hearing, the committee determined mandated medication was appropriate for Plaintiff. (*Id.* at 114, 121–22, 127–30). Plaintiff chose not to appeal this decision. (Doc. 35-3 at 114 (stating Plaintiff "chose not to appeal, and refused to assign the appeal form"), 121 ("did not appeal the decision"); 126 (checking the box for choosing not to appeal and refusing to sign)). What's more, his patient advisor determined that no appeal needed to be filed on his behalf. (*See id.* at 114, 126).

Plaintiff's next mandated medication hearing occurred on February 23, 2023. (Doc. 35-2 at 7). This time, the hearing committee consisted of Defendants Durner, Coe, and Springer. (Doc. 35-3 at 56–58). Although Plaintiff alleged in his pleadings that Defendant Morgan was also part of this committee, (Doc. 2 at 2), evidence submitted by Defendants shows she was not. (*Id.*; *see also* Doc. 35-2 (declaring that the committee consisted of Defendants Durner, Coe, and Springer only)). For this hearing, a new patient advisor was assigned to Plaintiff. (Doc. 35-2 at 7; Doc. 35-3 at 51 (listing Monica Dooley, RN), 53 (same)). And this time, Plaintiff chose to attend the hearing. (Doc. 35-3 at 52, 59). After the hearing, the committee again concluded mandated psychiatric medication was necessary. (*Id.* at 56–58). Once more, Plaintiff chose not to appeal this decision, and no appeal was filed on his behalf. (*Id.* at 55, 59 ("He was offered the opportunity to file an appeal. He declined this offer.")).

On July 25, 2023—a week before Plaintiff filed this action—Defendant Herrick prepared a request for a third mandated medication order. (Doc. 35-2 at 7). As a result, a third mandated medication proceeding took place on August 10, 2023. (Doc. 35-2 at 8). Nurse Raypole was again assigned as Plaintiff's patient advisor. (*Id.*). At the hearing, the committee decided mandated medication was appropriate. (*Id.*). But this time, Plaintiff filed an appeal, which was denied. (Doc. 2 at 3). Importantly, the August 10 hearing and appeal took place after this lawsuit was filed. (*See* Doc. 35-2 at 8 (stating the hearing took place on August 10, 2023); Doc. 2 at 3 (stating the appeal was filed the same day); Doc. 1 (filed on August 2, 2023)).

Based upon this undisputed evidence, Plaintiff failed to exhaust his administrative remedies for his claims against Defendants Morgan, Durner, Springer, Herrick, and Coe. ODRC Policy 67-MHN-29 provides a mechanism for a prisoner to appeal mandated medication decisions. (*See* Doc. 35-3 at 293, 299–300, 306). To ensure this appeal process is available to the prisoner, patient advisors are provided. (*Id.*). In addition, patient advisors are obligated to file appeals on the prisoner's behalf if he cannot verbalize whether he wants to appeal, "is severely decompensated," or lacks the capacity to appeal on his own. (*Id.* at 293, 299, 306). Here, even though Plaintiff was provided with a patient advisor and given the opportunity to appeal the committee decisions, he did not appeal on February 1 or February 23. (*Id.* at 55, 59, 114, 121, 126). More still, evidence submitted by Defendants does not establish that Plaintiff was so impaired that the patient advisor was required to file the appeal on his behalf. (*See* Doc. 35-3 at 293, 299, 306 (stating that in some circumstances, the patient advisor must file an appeal on the prisoner's behalf)). Instead, the evidence shows Plaintiff declined to appeal on both February 1 and February 23. (*Id.* at 55, 59, 114, 121, 126).

What's more, Plaintiff's appeal of the August 10 decision does not save his claims from dismissal.  This appeal came after Plaintiff filed this case on August 2, 2023.  (*See* Doc. 1 (complaint filed on August 2, 2023); Doc. 2 at 3 (appeal decision dated August 10, 2023)).  As discussed above, prisoners must complete their administrative remedies before filing suit, not after. *Hopkins*, 84 F. App'x at 527.  Therefore, Plaintiff's claims against these Defendants should be **DISMISSED without prejudice**.

## IV.    CONCLUSION

The Undersigned **RECOMMENDS** construing Defendants' Motions (Docs. 35, 37, 40, 41, 43) as those requesting summary judgment.  Because Plaintiff failed to exhaust his administrative remedies, the Undersigned further **RECOMMENDS** that all claims against Defendants be **DISMISSED without prejudice**.  Accordingly, the Court declines to address Defendants' other grounds for summary judgment.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date:  August 7, 2024                                          /s/ Kimberly A. Jolson
                                                                          KIMBERLY A. JOLSON
                                                                          UNITED STATES MAGISTRATE JUDGE